# 23-7640

## United States Court of Appeals
## for the Second Circuit

SEANPAUL REYES,

*Plaintiff-Appellee,*

*against*

CITY OF NEW YORK,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of New York

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION
FOR A STAY PENDING APPEAL AND AN ADMINISTRATIVE STAY
PENDING RESOLUTION OF THE MOTION**

Andrew Case
LatinoJustice PRLDEF
475 Riverside Drive
Suite 1901
New York New York
(212) 739-7506
acase@latinojustice.org

November 8, 2023
New York, New York

# Table of Contents

Preliminary Statement ................................................................................ 1

Standard of Review ................................................................................... 3

history ....................................................................................................... 4

Argument ................................................................................................... 7

I.     Material Not Admitted at the Hearing and
New Arguments Should be Ignored ..................................................... 8

II.    Plaintiff Demonstrated Irreparable Harm ......................................... 11

III.   Plaintiff is Likely To Succeed on The Merits ................................... 13

A.    Common-Law Property Principles Do Not Change the Result .......... 13

B.    The Legislature Intended the Right to Record Act to Apply Broadly, and One
Sponsor Confirms It was Passed Specifically to Address the Trespass Policy ............. 16

C.    Plaintiff Is Likely to Succeed on His CAPA Claim ............................ 18

D.    Public Interest and the Balance of Equities Favor Plaintiff ................. 19

E.    The Court Properly Exercised Supplemental Jurisdiction ................... 20

IV.    Conclusion ........................................................................................ 21

## PRELIMINARY STATEMENT

Over the past twenty years, civilian recording of police officers has revolutionized our understanding of police behavior. Civilians recording officers have exposed every kind of misconduct imaginable, including the murder of George Floyd. In the wake of these revelations, both the New York City Council and the New York State Legislature passed laws affirming civilians' right to record police officers. The language of those bills is clear: people have a right to record the police. Those legislatures understood, as the sponsor of the City Right to Record Act has attested to in federal court, that the right extended to the public lobbies of police precincts.

Two years before, the NYPD had issued a rule allowing officers to arrest people recording in precinct lobbies for trespassing (the "Trespass Policy"). The Trespass Policy was issued just as the NYPD was settling a lawsuit challenging its policy of arresting anyone who recorded a police officer. The policy was enacted in a single day without any review and without following the requirements of the Citywide Administrative Procedure Act.

SeanPaul Reyes is a journalist who reports on police and police misconduct— including when police departments violate the law. On April 3 and June 1 of this year, he visited NYPD precincts to complain that the Trespass Policy violated the Right to Record Act while recording the encounters. He was arrested both times pursuant to that policy. He filed this lawsuit to challenge the Trespass Policy.

After holding an evidentiary hearing and argument on the motion, the district court found that the NYPD's policy violated the plain text of the Right to Record Act and that continued enforcement of the Trespass Policy would cause Plaintiff irreparable harm. Both findings were supported by evidence and argument at the hearing.

The Court found that the Trespass Policy causes Plaintiff irreparable, ongoing harm because he is unable to exercise his right to record police officers without threat of arrest. On the stand Plaintiff had specified actions he had planned to take that he could not without an injunction. Defendant claims that Plaintiff will not suffer constitutional harm, but constitutional harm is not the only sort of irreparable harm. At the hearing Plaintiff testified as to precisely how the Trespass Policy is harming him.

Plaintiff is likely to succeed on the merits as well. At the hearing, Defendant's only argument was that the protections of the Right to Record Act were no broader than the First Amendment. Abandoning its sole argument below and replacing it with two new ones on appeal, arguments which it had every opportunity to raise but declined to do so, Defendant now claims that common-law private property principles allow the NYPD to supersede the language of the Right to Record Act and that the legislative history suggests an intent to carve out NYPD lobbies from the otherwise broad textual mandate. Defendant has waived both of these arguments. But even if it had not, they are meritless.

2

Moreover, Defendant's motion is crammed with material that was not before the district court, and neither of its arguments regarding the Right to Record Act were made before the district court. Defendant quotes extensively from an affidavit that was not admitted into evidence but fails to quote the hearing transcript even once, at times ignoring argument and testimony from the hearing that directly refutes its points.

Neither an administrative stay nor a stay pending appeal is appropriate here.

## STANDARD OF REVIEW

A party seeking a stay of a district court order pending appeal bears the burden of demonstrating the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). These factors are similar to the preliminary injunction factors "because similar concerns arise whenever a court order may allow or disallow anticipated action." *Id.*

Staying a preliminary injunction, therefore, requires reversing the district court on at least three findings, including which party will succeed on the merits. For that reason, such stays are rare. "Only when we think the district court may have misapplied the rules governing the issuance of this extraordinary remedy—and that the exercise of its discretion therefore fell outside permissible limits—will we reverse." *JSG*

3

*Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) (staying an injunction that was issued based on "the possibility" of irreparable harm instead of a "likelihood"). Granting such a stay "will almost always be logically inconsistent with a prior finding of irreparable harm." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999). And this court reviews a "district court's determination that a party has waived an argument for an abuse of discretion." *Amara v. Cigna Corp.*, 53 F.4th 241, 256 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 2484 (2023).

A Court's inherent power to issue an administrative stay while it considers the stay pending appeal "allows a court to act responsibly, by ensuring that the time the court takes to bring considered judgment to bear on the matter before it does not result in irreparable injury to the party aggrieved by the order under review." *Nken*, 556 U.S. at 418.

## <u>HISTORY</u>

In 2016, Ruben An sued the City of New York for the NYPD's unlawful policy of arresting people who recorded them. *See An v. City of New York*, 16-cv-5381 (LGS) (S.D.N.Y. June 1, 2017). When that case was settled in 2018, the NYPD issued a Patrol Guide Procedure (PG 203-29) that contained the original version of the Trespass Policy. There is no evidence in the record or anywhere else that the NYPD had a separate policy regarding recording in precinct lobbies prior to 2018.

4

On August 13, 2018, a man recorded himself shouting obscenities at officers within the 28th Precinct. The next day, he posted the video on a social media site, and by August 16, the NYPD claimed that it had circulated a memo codifying the Trespass Policy. *See* Tina Moore & Amanda Woods, *NYPD Bans Civilians from Recording Video Inside Precincts*, N.Y. Post (Aug. 18, 2018), https://nypost.com/2018/08/18/nypd-bans-civilians-from-recording-video-inside-precincts/. The policy was enacted in a matter of days and without following the procedures of the Citywide Administrative Procedure Act.

In 2020 both the New York City Council and the New York State Legislature passed laws enshrining the public's right to record police officers. On June 14, the governor signed the New York State Right to Record Act, which establishes that "[a] person not under arrest or in the custody of a law enforcement official has the right to record law enforcement activity and to maintain custody and control of that recording and of any property or instruments used by that person to record law enforcement activities." N.Y. Civ. Rts. L. § 79-P(2). The law defines "law enforcement activity" as "**any activity** by an officer acting under color of law." *Id.* § 79-P(1)(b) (emphasis added). On June 18, 2020, the New York City Council passed the Right to Record Act, which reads: "A person may record police activities and maintain custody and control of any such recording and of any property or instruments used in such recording." N.Y.C. Admin. Code § 14-189(b).

5

Plaintiff is an independent journalist who documents police conduct and misconduct and broadcasts these recordings to his hundreds of thousands of followers. (Transcript at 6:11–16; 8:2–13). On April 3, 2023, Plaintiff was arrested while recording inside the 61st precinct in Brooklyn. (Transcript at 10:19–11:14). He was subsequently arrested inside the 75th precinct in Brooklyn while recording on June 1, 2023.

On July 24, 2023, Plaintiff filed a complaint alleging that the Trespass Policy violated the First Amendment, the City Right to Record Act, the State Right to Record Act, and the Citywide Administrative Procedure Act. (Doc. 1)

A hearing was held on September 28 and the Court issued a preliminary injunction on November 2. (Doc. 28, "Order"). The Court found that Plaintiff was likely to succeed on his state and municipal Right to Record Act claims (Order at 22–24), that he was irreparably harmed because he is unable to exercise his rights under the Right to Record Acts without being arrested (Order at 25) and that the public interest and equities favored an injunction (Order at 26–27). It enjoined Defendant from "enforcing the Procedure in NYPD police precinct lobbies except to the extent consistent with the New York State and City Right to Record Acts." (Order at 27).

The parties agreed to a two-week stay so that the NYPD could implement a plan to comply with the Order, which the Court approved. (Doc. 32) ("the Court GRANTS the request for the City to have until November 17, 2023 to implement the injunctive measures set forth in the Court's November 2, 2023 Order"). On November 7, the

6

District Court ordered the NYPD to prepare for November 17 compliance by reading a message to officers starting on November 9 that reads, in part, "Unless the Appeals Court acts before November 17, 2023, on that day members of the public will be permitted to record within the publicly accessible areas of Department facilities." (Doc. 38) Defendant now seeks an administrative stay from having to read this message to officers and a stay pending appeal of the original order.

## ARGUMENT

The district court found that Plaintiff was likely to succeed on the merits of his Right to Record Act Claim (Order at 22–24), that Plaintiff made "a strong showing of irreparable harm," (Order at 25), and that the balance of equities and public interest favors an injunction. (Order at 26–27). Defendants seek a stay, claiming all of these findings were wrong.

As a preliminary matter, Defendant cites generously to an affidavit that was not admitted at the preliminary injunction hearing while failing to cite to the transcript of that hearing even once. And Defendant makes two new arguments that were not presented to the district court with no explanation as to why they were not raised below.

Defendant's arguments should be rejected. The nature of the irreparable harm was discussed at the hearing and in the Court's order. Defendant's new arguments need not be considered, but if they are considered they fail. And the public interest and the

balance of equities still favor Plaintiff—though even if they did not that would not be sufficient reason to stay the injunction pending appeal.

Moreover, Defendant has failed to address another entirely different reason that the Trespass Policy is illegal—it was passed in violation of the Citywide Administrative Procedure Act. The trial court "decline[d] to consider" this claim in the Order, but Defendant cannot make a "strong showing that he is likely to succeed on the merits" without even addressing this claim. *Nken*, 556 U.S. at 434.

## I.  <u>Material Not Admitted at the Hearing and New Arguments Should be Ignored</u>

The district court held a hearing on September 28 at which it took evidence from Plaintiff and from Joseph Leone, the Executive Officer of the Seventy-Fifth Precinct. Plaintiff has attached the entire transcript of that hearing to this motion as **Exhibit A**. ("Transcript"). In its motion, Defendant does not quote from or cite to the hearing transcript at all. Instead, Defendant cites extensively to an affidavit from Peter Callahan of the NYPD that was attached to Defendant's opposition to Plaintiff's motion for a preliminary injunction. (Doc. 20-5.)

But Mr. Callaghan did not testify at the hearing, and his affidavit was not admitted into evidence. And no wonder—Mr. Callaghan has no personal knowledge of the interior of precincts, and each of the alleged concerns that Defendant cites to in its motion was affirmed only "Upon information and belief." *See* Callaghan Aff. ¶¶ 6, 7, 8, 9 ("Upon information and belief"). Had Defendant sought to enter the Callaghan

8

Affidavit into evidence, it would not have been admitted. *See Groschlaude v. Lawlor*, 78 Misc. 3d 679, 685 (N.Y. Civ. Ct. 2023) ("Speculative allegations made 'upon information and belief' do not state facts"). This Court should not rely on the Callaghan Affidavit, which was not part of the record at the court below and should instead rely on the transcript of the evidentiary hearing. *Gorbea v. Verizon New York Inc.*, No. 20-3486, 2021 WL 4851389, at *1 (2d Cir. Oct. 19, 2021), *cert. denied,* 142 S. Ct. 1672 (2022) ("We do not consider the new factual allegations and evidence that {appellant} offers on appeal, nor do we consider the new claims that she raises for the first time in her briefing on appeal.")

Defendant's actual hearing witness was much more measured. He confirmed that the NYPD can provide private spaces to those who do not wish to speak in a public lobby. (Transcript at 37:8–38:6). He acknowledged that anything someone could record in a public lobby could be seen by any other member of the public in the lobby anyways. (Transcript at 38:14 – 39:13). When asked "If you really needed to say something that no members of the public could hear, you could go back to a private area of the precinct to do that," he confirmed that he could. (Transcript at 40:23–41:1).

This court should make its ruling based upon the evidence that was introduced at the preliminary injunction hearing on September 28, and should "decline to depart from our general rule that federal appellate courts will not consider evidence which is

not part of the trial record." *Joseph v. Springer Nature Am. Inc.*, No. 21-959-CV, 2021 WL 6105369, at *2 (2d Cir. Dec. 21, 2021) (cleaned up).

In addition to citing evidence that was not admitted at the hearing and ignoring the testimony that took place, Defendant has added two arguments that it had every opportunity to raise but chose not to raise in the briefing below or the hearing on the preliminary injunction. Defendant's only argument below that the Right to Record Acts do not bar the Trespass Policy was that the Acts' prohibitions were coterminous with the First Amendment. (*See,.e.g.,* Transcript at 69:10-71:9) (In response to a line of direct questions about Defendant's basis for arguing that the trespass policy does not violate the Right to Record Acts, Defendant declined to put forth any alternative arguments).

Now, for the first time on appeal, Defendant argues that 1) the common-law property rights of police precincts allow them to bar recording despite the plain language of the Right to Record Act, and 2) legislative history of the Right to Record Act suggests that it was meant to bar recording in precincts. These arguments both fail on the merits but should be rejected in any case because they "were not raised in the district court and because {Defendant} has failed to present any reasonable ground for its consideration by this Court." *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) (*citing Allianz Insurance Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir.2005) (circumstances "do not militate in favor of an exercise of discretion to address ... new arguments on appeal" when they were "available to the [parties] below" and they "proffer no reason

10

for their failure to raise the arguments below.") Defendant has not made any claim that the two new arguments it now asserts were previously unavailable to it nor has it proffered any reason for its failure to raise them, even after it was directly probed to do so by the court.

## II.      **Plaintiff Demonstrated Irreparable Harm**

Defendant's principal argument is that Plaintiff has not demonstrated irreparable harm because no injunction was issued on the First Amendment claim and that "[r]ather than spell out any irreparable harm he was likely to suffer, he relied entirely on the presumption of irreparable harm that attaches to constitutional violations." (Motion at 14).

But the hearing transcript demonstrates otherwise. Mr. Reyes was asked about his future plans and stated with specificity "I'm trying to continue my investigation into the NYPD. I have received numerous tips on a weekly basis from people in the New York City area about police misconduct. A lot of people want me to help them file complaints and record that interaction . . . but I can't do that. I can't do that because I will be arrested." (Transcript at 12:25–13:19). Plaintiff cannot respond to these requests because if he does so he will be arrested for exercising rights guaranteed by state law. This injury is "actual and imminent and that cannot be remedied by an award of monetary damages." *Forest City Daly Housing, Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir.1999) (internal quotation marks omitted).

And during oral argument, Plaintiff's counsel explained that while the threat of arrest for expressing his state-law rights was not afforded the presumption that constitutional harm is afforded, "it's the same harm, and there is no way that Mr. Reyes could be compensated a year and a half from now for not being able to record during the pendency of this litigation. He's still being harmed in the same way, and he's still unable to have another remedy other than an injunction at this point." (Transcript at 64:22–65:3).

Finding that Plaintiff will be irreparably harmed by missing these opportunities, even though his rights are guaranteed only by state law and not federal law, is not unusual. Injunctions are proper in response to potential violations of the Sherman Act, *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015), or state-law unfair competition claims. *Innoviant Pharmacy, Inc. v. Morganstern*, 390 F. Supp. 2d 179, 183 (N.D.N.Y. 2005). A news service threatened with a loss of photographs from a supplier suffers irreparable harm. *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 908–09 (2d Cir.1990). The loss of goodwill and customers can be irreparable harm. *Jacobson & Co. v. Armstrong Cork Co.,* 548 F.2d 438, 445 (2d Cir.1977).

Plaintiff did not rely solely on the constitutional claim to show he was irreparably harmed, and neither did the district court. *See* Order at 25 ("Plaintiff faces a choice between pursuing filming the police –something that *New York law* unequivocally permits him to do – or being arrested because of NYPD's continued

12

enforcement of this Procedure.") The district court made this finding after an evidentiary hearing, and "[o]n review after an evidentiary hearing, we must accept the district court's findings of fact unless they are 'clearly erroneous.'" *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985).

The Court properly identified Plaintiff's irreparable harm. And in any event, Defendant says nothing of its actual burden: not to show that the district court improperly identified Plaintiff's harm but that "the **applicant** will be irreparably injured absent a stay." *Nken*, 556 U.S. at 434. The City has not suggested that it will be irreparably harmed by complying with the Right to Record Act.

## III.    <u>Plaintiff is Likely To Succeed on The Merits</u>

Now that the district court has agreed that the Right to Record Acts mean what they say, Defendant has abandoned the arguments it made in the briefs and at the hearing and forwarded two new ones instead. Even had Defendant had not waived these arguments, they provide no support for a stay.

Finally, Defendant does not even address Plaintiff's Citywide Administrative Procedure Act claim and cannot prove it is likely to succeed on the merits of that claim.

### A.    **Common-Law Property Principles Do Not Change the Result**

Defendant discusses the traditional law of trespass applicable to private property owners and then claims causally that "subject to constitutional constraints, governmental property owners enjoy the same right to exclude." (Opening Brief at 19).

13

But the cases Defendant cites do not support this broad claim. Instead, they (and other similar cases) stand for the principle that the government may not eject someone from a publicly accessible space unless that person engages in conduct that is "basically incompatible with the normal activity of a particular place at a particular time." *People v. Hedemann*, 107 Misc. 2d 241, 242 (App. Term 1981) (upholding ejection of person who handed out leaflets that "encouraged the nonpayment of federal taxes" to those in line at the IRS office).

Defendant cites a case in which a person who stands in a university office room for two hours demanding paperwork to which he is not entitled can be asked to leave. *People v. Munroe*, 18 Misc. 3d 9, 10 (App. Term 2007). And it provides one where protesters were ejected from the interior office of the city health commissioner after they occupied it, "banged on the conference table" and "shouted abusive slogans." *People v. Alderson*, 144 Misc. 2d 133, 137 (Crim. Ct. 1989). And it relies on *People v. Reape*, where a man who was standing and shouting in a precinct lobby for a detective who wasn't there was lawfully arrested because his continued behavior "would interfere with the ordinary use of the property of the Police Department and by other members of the public." *People v. Reape*, 22 Misc. 3d 615, 619 (Crim. Ct., Kings Cnty. 2008).

None of these cases suggest a different outcome here. Defendant's theory would allow any public library, university, government office or court to eject people for engaging in peaceful, non-obstructive conduct protected by state law. The Right to

14

Record Acts are explicit, and their limited exceptions do not include police precincts. The New York State Right to Record Act establishes that "[a] person not under arrest or in the custody of a law enforcement official has the right to record law enforcement activity and to maintain custody and control of that recording and of any property or instruments used by that person to record law enforcement activities." N.Y. Civ. Rts. L. § 79-P(2). The law defines "law enforcement activity" as "*any* activity by an officer acting under color of law," with no given exceptions. *Id.* § 79-P(1)(b). New York City's Right to Record Act ("RTRA") states that "[a] person may record police activities and maintain custody and control of any such recording and of any property or instruments used in such recording." N.Y.C. Admin. Code § 14-189(b).

There is no allegation that Plaintiff was engaging in disruptive behavior or anything that "would interfere with the ordinary use of the property." *People v. Reape*, 22 Misc. 3d at 619. Police precincts are particularly public places: they are, after all, open for the specific purpose of filing criminal complaints, and "it is axiomatic that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition government for the redress of grievances." *Est. of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004). They are not governed by the classic common-law property rules but by the case law set forth above. Defendant presents no case suggesting that a government property may exempt itself from

15

generally applicable state and municipal laws under the guise of exercising private property rights.

**B.** **The Legislature Intended the Right to Record Act to Apply Broadly, and One Sponsor Confirms It was Passed Specifically to Address the Trespass Policy**

Defendant, which cited to no legislative history to date in this litigation, now introduces legislative history in an effort to prove that despite the laws' broad language, their purpose was only to codify the right to record police officers that some courts had found under the First Amendment and to go no further. (Opposition at 21–22). It does so by cherry-picking statements by some legislators and a police official who testified at the City Council. (Opposition at 23).

But the broad language of both acts indicates the legislative intent: "Inasmuch "[a]s the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *In re Shannon*, 25 N.Y.3d 345, 351 (2015).

But were it appropriate to rely on legislative history, history ignored by Defendant shows that the authors of the bills wanted to provide more expansive protection than the First Amendment. Both laws were signed as part of a large package of police reform measures — including measures aimed systemically at reforming police misconduct.

16

When the law was passed, Donovan Richards, then the chair of the Public Safety Committee of the City Council, emphasized that the purpose of the law was to remove decision-making authority from the NYPD. He told the voting members that "We need you to say that the NYPD cannot decide how we are going to police this city." Transcript of the Minutes of the New York City Council Committee on Public Safety, June 18, 2020, at 7:8–11. And the Sponsor Memo that accompanied the bill stated that "[t]he purpose of [the Act] is to unambiguously affirm, by statutory enactment, the right of New Yorkers to record, *with expressed exceptions*, the actions of persons acting under the color of law." *See* S3253A Sponsor Memo, Senator Kevin S. Parker, *available at* https://www.nysenate.gov/legislation/bills/2019/S3253 (emphasis added). These expressed exceptions do not include precinct lobbies.

Finally and decisively, the author of the City Right to Record Act, current Public Advocate Jumaane Williams, has made clear what he intended when he wrote the legislation. Among other things, it was *specifically addressed at ending the NYPD's Trespass Policy*. Williams's declaration in another matter, *Rodney v. City of New York*, 22-cv-1445, is attached hereto as **Exhibit B**. In it, Williams states that he was aware that the NYPD had issued the Trespass Policy in 2018, that he opposed the policy, and that "In response and in an attempt to end these proscriptive practices, the Council codified the right to record in the RTRA, which defended the right of citizens to record interactions with officers performing their official duties, with the goal of deterring well-

17

documented police misconduct in public places, **including misconduct inside the
public spaces of a police station**." (Williams Delc. at ¶ 12, emphasis added).

### C.      Plaintiff Is Likely to Succeed on His CAPA Claim

Though the Court below declined to address Plaintiff's Citywide Administrative
Procedure Act (CAPA) claim, an appellate court may affirm based on "any ground
appearing in the record." *Maslow v. Bd. of Elections in City of New York*, 658 F.3d 291, 299
(2d Cir. 2011) (citing *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 49 (2d Cir.2010)). For
the reasons below, Plaintiff is likely to succeed on his CAPA claim and, conversely,
Defendant, in failing to address CAPA, cannot prove that it is "likely to succeed on the
merits."

The Citywide Administrative Procedure Act ("CAPA") requires agencies to meet
strict requirements when enacting rules. N.Y. City Charter §§ 1041–46. CAPA defines a
"rule" as "any statement or communication of general applicability that (i) implements
or applies law or policy, or (ii) prescribes the procedural requirements of an agency
including an amendment, suspension, or repeal of any such statement or
communication." *Id.* § 1041(5). It specifically includes any statement that "prescribes
standards which, if violated, may result in a sanction or penalty." *Id.* § 1041(5)(a).

This definition is intentionally expansive. Requiring taxi drivers to provide air
conditioning to those in the rear seats is a rule. *N.Y.C. Comm. for Taxi Safety v. N.Y.C. Taxi
& Limousine Comm'n*, 177 Misc. 2d 855, 858 (Sup. Ct. 1998), *aff'd sub nom. N.Y.C. Comm.*

18

*for Taxi Safety v. N.Y.C. Taxi & Limousine Comm'n*, 256 A.D.2d 136 (App. Div. 1st Dept. 1998). Modifying the guidelines that Administrative Law Judges use to determine fines for street vending violations is a rule. *Ousmane v. City of N.Y.*, 7 Misc. 3d 1016(A) (Sup. Ct. 2005). Prohibiting the ownership of pet ferrets is a rule. *1700 York Assocs. v. Kaskel*, 182 Misc. 2d 586, 593–94 (Civ. Ct. 1999).

The Trespass Policy subjects members of the general public to arrest and prosecution for engaging in First Amendment activity in a place open to the public. It unquestionably "prescribes standards which, if violated, may result in a sanction or penalty." *Id.* § 1041(5)(a). A policy that requires you to comply or to lose rights is a rule under CAPA. *439 E. 88 Owners Corp. v. Tax Comm'n*, 6 Misc. 3d 1014(A) (Sup. Ct., N.Y. Cnty. 2002), *aff'd*, 307 A.D.2d 203 (App. Div. 1st Dept. 2003). Whether the NYPD itself considers the policy a "rule" is of no import because an agency "may not circumvent CAPA's rulemaking requirements by giving a different label to what is in purpose or effect a rule or amendment to a rule." *Kaskel*, 182 Misc. 2d at 594.

### D.    Public Interest and the Balance of Equities Favor Plaintiff

In arguing that the balance of equities favors a stay, Defendant picks a few concerns that the district court balanced against the Right to Record Act's mandate. It is important that those wishing to report crimes privately may do so: but as the testimony at the hearing made clear, the NYPD already provides those who would not like to report crimes in the public lobby the chance to do so in private. (Transcript 37:1–38:2).

19

Defendant's worry about confusion is overblown. As Captain Leone testified, the NYPD is a paramilitary organization, and relies on individuals carrying out the orders of their supervisors. (Transcript 36:20–37:5). The current order is perfectly clear: the NYPD has until November 17 to instruct officers that they have to start letting people record on that day. Nor will the injunction allow people to "surveil" precincts or discover the NYPD's secrets. As the hearing made clear, anything that someone can film in the lobby of the precinct is already visible to others present. (Transcript 38:7 – 39:8).

Finally, Defendant's suggestion that the injunction be limited to Plaintiff is unworkable and would lead to the very confusion Defendant seeks to avoid. If others who see that Plaintiff is allowed to record try to record and are arrested, they will likely file their own lawsuits, seeking their own individual injunctions. Concerns over how injunctions affect non-parties carry less weight when all that is happening to those non-parties is they are being granted access to a right previously denied them.

### E.    The Court Properly Exercised Supplemental Jurisdiction

The case is not as complex as Defendants would have the Court believe. The state law claims involve straightforward application of clearly worded statutes. Compare this to the type of statutory question over which exercising statutory jurisdiction is improper: one posing "a question of state law which not only is undecided, but which also requires a balancing of numerous important policies of state government: the relationship between state and municipal entities, the public interest in removing

individuals accused of crimes from positions of authority, and local governments' budgetary constraints." *Seabrook v. Jacobson*, 153 F.3d 70, 73 (2d Cir. 1998). It was proper for the district court to exercise jurisdiction over the state law claims and issue an injunction even without issuing an injunction based on the constitutional claims. While there is no injunction based on the federal claims, they have not been dismissed and Plaintiff will continue to litigate them while the injunction is in place.

IV.    <u>Conclusion</u>

For the reasons stated above, Plaintiff respectfully requests that this Court deny both Defendant's motion for an administrative stay and for a stay pending appeal and allow this appeal to proceed in an orderly and timely manner.

Dated: November 8, 2023
New York, New York

Respectfully Submitted,
    /s/ *Andrew Case*
Andrew Case
Meena Roldán Oberdick
LatinoJustice PRLDEF
475 Riverside Drive
Suite 1901
New York New York
(212) 739-7506
acase@latinojustice.org

21